**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KELDA PRICE** | **CIVIL ACTION NO. 09-0176** |
| **VERSUS** | **JUDGE DOHERTY** |
| **CHARLES PORTER** | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Pending before the court is the Motion to Dismiss filed by Sixteenth Judicial District Court Judge Charles Porter ("Judge Porter"). [rec. doc. 10]. By this Motion, Judge Porter seeks dismissal of this civil rights action purportedly filed pursuant to 42 U.S.C. § 1883 on grounds that the action is barred by the *Rooker-Feldman* and *Younger* abstention doctrines, and also because he is judicially immune from suit. *Pro se* plaintiff, Kelda Price ("Price"), has filed Opposition. The Motion has been referred to the undersigned for report and recommendation. [rec. doc. 13].

For the following reasons, it is recommended that the defendant's Motion to Dismiss [rec. doc. 10] be **GRANTED**, and accordingly, that the instant civil rights action be **DISMISSED WITH PREJUDICE.**

## STATEMENT OF CLAIM

Before the court is a civil rights action filed *in forma pauperis* by *pro se* plaintiff, Kelda Price, on January 16, 2009.[1] In her Complaint, plaintiff complains that Judge Porter deprived her of her Fourteenth Amendment rights to due process and equal

---

[1] The action was originally filed in the United States District Court for the Middle District of Louisiana, but was transferred to this court on February 2, 2009.

protection when he presided over a case she had pending before him. More specifically, she complains that Judge Porter had previously been employed by her opponent and yet continued to preside over the proceedings. Accordingly, she requests that this court "remove and discipline Judge [Porter], make null and void his orders, provide any and all equitable relief, [and] any relief possible."

It is not clear whether plaintiff's state court action is currently pending or whether that action has been resolved. However, for the reasons set forth below, in either instance, plaintiff's action is subject to dismissal.

## LAW AND ANALYSIS

### I. *Rooker-Feldman* Doctrine

By this action, plaintiff seeks an order of this court declaring Judge Porter's Orders in a state court action pending before him null and void. To the extent that these Orders constitute adverse state court judgments entered against Price, the instant lawsuit constitutes an impermissible collaterally attack on these judgments in federal court.

The *Rooker-Feldman*[2] doctrine holds that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments. A federal complainant cannot circumvent this jurisdictional limitation by asserting claims not raised in state court proceedings or claims framed as original claims for relief. *United Sates v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994). If a state court errs, the judgment is not void, it is to be

---

[2] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 1311 & 1315, 75 L.Ed.2d 206 (1983)

**2**

reviewed and corrected by the appropriate state appellate court.  Thereafter, federal recourse is limited solely to an application for a writ of *certiorari* to the United States Supreme Court.  *Liedtke v. State Bar of Texas,* 18 F.3d 315, 317 (5th Cir. 1994); *See also Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions.").

The *Rooker/Feldman* doctrine holds that a party losing in state court is barred from seeking what, in substance, would be appellate review of the state judgment in a United States District Court; inferior federal courts lack jurisdiction to exercise such review. *Johnson v. DeGrandy,* 512 U.S. 997, 114 S.Ct. 2647, 2654, 129 L.Ed.2d 775 (1994); *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003).  The fact that a plaintiff may have forfeited her rights to appeal the judgment at issue in state court proceedings does not circumvent this rule.  *Shepherd*, 23 F.3d at 925.

Further, if a federal district court is confronted with issues that are "inextricably intertwined" with a state court judgment, the court is, in essence, being called upon to review the state court decision; the originality of the district court's jurisdiction precludes such a review.  *Shepherd,* 23 F.3d at 924.  The *Rooker-Feldman* doctrine precludes not only review of adjudications of the state's highest court, but also the decisions of its lower courts.  *Jordahl v. Democratic Party of Virginia,* 122 F.3d 192, 199 (4th Cir. 1997) *citing*

*Port. Auth. Police Benevolent Ass'n v. Port Authority of N.Y. and N.J. Police*, 973 F.2d 169, 177 (3d Cir. 1992).

Under the *Rooker-Feldman* doctrine, the Fifth Circuit has consistently rejected challenges to state court proceedings based on alleged constitutional violations of state court judges in those proceedings. *Chrissy F. by Medley v. Mississippi Dept. of Public Welfare,* 995 F.2d 595 (5th Cir. 1993) (challenge to a state custody rulings by a state Chancery Court judge and Youth Court referee); *Sookma v. Millard*, 151 Fed.Appx. 299 (5th Cir. 2005) (challenge to divorce and custody decree based on alleged conspiracy between litigants and presiding state court judges); *Williams v. Liberty Mutual*, 2005 WL 776170 (5th Cir. 2005); *Glatzer v. Chase Manhattan Bank*, 108 Fed.Appx. 204 (5th Cir. 2004); *Larrew v. Barnes*, 87 Fed.Appx. 407 (5th Cir. 2004); *Bell v. Valdez*, 207 Fed.Appx. 657 (5th Cir. 200) *citing Wijas v. Nelson*, 1994 WL 117988, at *1 (7th Cir.1994) (unpublished) (suit challenging divorce proceedings against ex-wife and presiding judge), *Pilkington v. Pilkington*, 389 F.2d 32 (8th Cir.1968), *Carlock v. Williams*, 1999 WL 454880 (6th Cir.1999) (unpublished) (same holding), *Shqeir v. Martin*, 1997 WL 587482, at *2 (N.D.Tex.1997) (§ 1983 claim against judge in state divorce proceeding dismissed under *Rooker-Feldman* as "seeking a reversal" of the divorce court proceeding "under the guise of a civil rights action") and *Logan v. Lillie*, 965 F.Supp. 695, 699 n. 6 (E.D.Pa.1997) ("The Court's decision is consistent with the clear trend of case authority holding that actions brought under §§ 1983 and 1985 but which are bottomed on claims

**4**

of constitutional violations arising out of state court child custody proceedings are 'inextricably intertwined' with such custody proceedings and therefore are barred under the *Rooker-Feldman* doctrine from the subject matter jurisdiction of the federal courts."); *Gilbert v. Gunja*, 184 Fed.Appx. 817 (5th Cir. 1999); *Hatter v. Brinkman*, 124 F.3d 193 (5th Cir. 1997); *Williams v. Landmark Exploration*, 68 F.3d 465 (5th Cir. 1995).

A review of the allegations in Price's complaint reveals that this suit is "inextricably intertwined" with the state court's judgments which were apparently adverse to Price. *See Shepherd*, 23 F.3d at 924 and *Feldman,* 460 U.S. at 1416, S.Ct. at 483. Therefore, this court is clearly without jurisdiction to entertain plaintiff's challenge. Price expressly seeks a reversal of the rulings made by the state court and new adjudication of the issues presented in her state court suit. Clearly, plaintiff's request for relief, stripped to essentials, is a collateral attack on the adverse judgments of Judge Porter of the Louisiana Sixteenth Judicial District Court. The present civil action is "inextricably intertwined" with those judgments. Plaintiff's sole federal recourse is with the United States Supreme Court on application for writ of *certiorari*; she has no recourse in this federal district court.

**II. Mandamus Relief**

This court also lacks jurisdiction to issue an order to the Sixteenth Judicial District Court requiring the state court to remove and discipline Judge Porter. Federal courts lack jurisdiction to issue orders to a state court to act upon a case pending before it. *Moye v.*

*Clerk, DeKalb County Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973) (a federal court lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties) *citing Lamar v. 118th Judicial District Court of Texas*, 440 F.2d 383 (5th Cir. 1971) and *Haggard v. Tennessee,* 421 F.2d 1384 (6th Cir. 1970).

### III. *Younger* Abstention

To the extent that Price's state court action is currently pending, it is well settled that federal courts should not interfere in ongoing state court proceedings except in very extraordinary situations, not established in this case[3], based upon principles of federalism and comity. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)[4]; *See also Samuels v. Mackell,* 401 U.S. 37, 54, 91 S.Ct. 764, 768 (1971) (applying

---

[3]Courts may disregard the *Younger* doctrine only if one of the narrowly delineated exceptions to the doctrine applies. These exceptions include cases where it is established that a state court criminal proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, when a state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or when application of the doctrine was waived. *Texas Association of Business v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (citations omitted); *Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 677 (1971) (requiring that harassment and bad faith be proven for federal intervention into a pending state criminal prosecution); *Ballard v. Wilson,* 856 F.2d 1568, 1570-1571 (5th Cir. 1988) (same); *Wightman v. Texas Supreme Court*, 84 F.3d 188, 190-191 (5th Cir. 1996) (requiring more than mere allegations of bad faith for application of the bad faith/harassment exception); *Wilcox v. Miller*, 691 F.2d 739, 741 (5th Cir. 1982). *See also Granger v. Slade*, 90 Fed.Appx. 741 (5th Cir. 2004). None of these exceptions have been shown to apply in this case.

[4]The Supreme Court's decision was grounded on principles of equity and on notions of comity, to which it gave the name, "Our Federalism". "Our Federalism" represents a "system in which there is sensitivity to the legitimate interests of both State and National governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id*. at 44, and at 750. The notion of comity "includes a proper respect for state functions, a recognition of the fact that the entire country is made up of a union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 431-32, 102 S.Ct. 2515, 2520-21 (1991).

*Younger* to claims for declaratory relief). The *Younger* abstention doctrine "is generally deemed appropriate [when] assumption of jurisdiction by a federal court would interfere with pending state proceedings, whether of a criminal, civil, or even administrative character." *Word of Faith World Outreach Center Church, Inc. v. Morales*, 986 F.2d 962, 966 (5th Cir.), *cert. denied*, 510 U.S. 823, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993).

It is well settled that the *Younger* abstention doctrine is fully applicable even where federal intervention would not bring the proceeding to a halt. "An equally significant dimension of the *Younger* holding is the respect for the integrity and competence of state judicial officials in adjudicating constitutional issues before them." *Kramer v. Metro-Dade Corrections and Rehabilitation Department*, 822 F.Supp.1572, 1574 (S.D. Fla. 1993) *citing Wilson v. De Bruyn*, 633 F.Supp. 1222, 1225 (W.D.N.Y. 1986). The policy of equitable restraint expressed in *Younger* counsels against any federal intervention in pending legal proceedings that could be interpreted "as reflecting negatively on the state court's ability to enforce constitutional principles." *Id*. at 1573 *citing Huffman v. Pursue, Ltd*., 420 U.S. 592, 604, 95 S.Ct. 1200, 1208 (1975).

In implementing the *Younger* policy of non-interference, federal courts must focus upon the practical impact of any potential ruling. *See Ballard v. Wilson*, 856 F.2d 1568, 1570 (5th Cir. 1988). Accordingly, the Fifth Circuit has stated that " we cannot ignore the fact that any injunction or declaratory judgment issued by a federal court would affect the course and outcome of the pending state proceedings ." *Id*. at 1570. Moreover the

7

Fifth Circuit noted that, "a federal court ruling on the practices and procedures of the municipal court system . . . would require supervisory enforcement of the ruling by the federal courts . This type of monitoring of state court procedures . . . offends principles of federalism and was condemned by the Supreme Court in *O'Shea v. Littleton* . . . ." *Id.* In so finding the Fifth Circuit favorably cited a Sixth Circuit decision "holding that where the complaint alleges failure of some state judges properly to follow the law, a federal court will not enjoin the alleged unconstitutional practices even in the absence of a pending state proceeding, since the relief sought would require monitoring of the judges' conduct." *Id. citing Parker v. Turner*, 626 F.2d 1, 9 (6th Cir.1980).

With respect to Price's claims herein, this reasoning is compelling. It is simply not the role of this Court to supervise a state court judge's handling of his judicial caseload. Plaintiff is requesting that this Louisiana federal court make declaratory and injunctive orders which would affect a potentially ongoing Louisiana state court proceeding. If this court granted declaratory, equitable or injunctive relief to Price, the court would become inextricably intertwined with the daily administration of state judicial proceedings. However, the *Younger* doctrine prohibits this court from doing so. Accordingly, plaintiff's request for declaratory, equitable and injunctive relief with respect to any ongoing state court proceedings must be dismissed.

**IV. Judicial Immunity**

Even if plaintiff's claims against Judge Porter were not barred by the *Rooker-Feldman* or *Younger* abstention doctrines, this suit must be dismissed because Judge Porter is entitled to absolute judicial immunity for his judicial acts as a Louisiana state court judge. Thus, plaintiff's claims are not cognizable in this court. State court judges enjoy absolute judicial immunity from civil liability arising out of performance of their judicial duties[5], even if such judicial duties are taken in bad faith. *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). This immunity applies even when the judge is accused of acting maliciously and corruptly. *Pierson*, 386 U.S. at 554, 87 S.Ct. at 1218. Moreover, disagreement with an action taken by a judge does not deprive the judge of his immunity. *Stump*, 435 U.S. at 363, 98 S.Ct. at 1108. Additionally, a state court judge is absolutely immune from civil liability even if his exercise of authority is flawed by grave procedural errors or his failure to comply with the elementary principles of due process. *Brandley v. Keeshan*, 64 F.3d

---

[5] Acts are judicial in nature if they are (1) normal judicial functions, (2) that occurred in the judge's court or chambers and were (3) centered around a case pending before a judge. *Mireles, supra; Brewer v. Blackwell*, 692 F.2d 387, 396-397 (5th Cir. 1982). Courts unanimously have found that a failure to recuse oneself is a judicial act for purposes of absolute judicial immunity. *Shepherdson v. Nigro*, 179 F.R.D. 150, 152 (E.D.Pa. 1998) *citing Callahan v. Rendlen*, 806 F.2d 795, 796 (8th Cir. 1986), *Schiff v. Dorsey*, 877 F.Supp. 73, 76 (D.Conn. 1994), *Sato v. Plunkett*, 154 F.R.D. 189, 191 (N.D.Ill. 1994), *Font v. Dapena Yordan*, 763 F.Supp. 680, 682 (D.P.R. 1991), *Iseley v. Bucks County*, 549 F.Supp. 160, 164-165 (E.D.Pa. 1982), *Schafer v. Buhl*, 1994 WL 669688, *2 (W.D.Mich. 1994) (decisions regarding recusal are "indisputably" judicial acts), and *Kenard v. Nussbaum*, 1988 WL 25240, *2 (S.D.N.Y. 1988). Thus, "a judge is immune from suit on a claim predicated on his refusal or failure to recuse himself in a case which he otherwise has jurisdiction to adjudicate, whatever his motive." *Shepherdson*, 179 F.R.D. at 152.

196, 200 (5th Cir. 1995), abrogated on other grounds by *Wallace v. Kato*, 549 U.S. 384 (2007)[6]; *Stump*, 435 U.S. at 355-360 (reversing the appellate court's determination that the judge forfeited his immunity "because of his failure to comply with elementary principles of due process" because the court over which the judge presided was one of general jurisdiction and the judge therefore did not act in "the clear absence of jurisdiction"). Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act on his own convictions, without apprehension of personal consequences to himself." *Mireles*, 502 U.S. at 10, 112 S.Ct. at 287. "A judge will not be deprived of immunity because he was in error, took action maliciously or was in excess of his authority; rather he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Brandley*, 64 F.3d at 200; *Young v. Biggers*, 938 F.2d 565, 569 n. 5 (5th Cir. 1991). With respect to jurisdiction, the issue "is whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him." *Stump*, 435 U.S. at 356-57, 98 S.Ct. at 1105.

Price alleges that Judge Porter acted without jurisdiction because of his alleged "signing [of] Judgments directed to the Appellate Courts". However, as a Louisiana

---

[6]*Wallace* holds that the statute of limitations on a § 1983 damage claim for false arrest begins to run at the time the claimant becomes detained pursuant to legal process.

District Court Judge, Judge Porter had original subject matter jurisdiction to hear all state criminal and civil matters. La. Const. Art. 5 §16. Judge Porter was actively serving on the state court bench at the time of plaintiff's lawsuit, and was exercising the authority vested in him by the Constitution and statutory law of the State of Louisiana on cases pending before him in the court of general jurisdiction to which he was elected. Accordingly, it is clear that Judge Porter did not act "in the clear absence of all jurisdiction".

Price suggests that Judge Porter is not entitled to immunity because his actions, in failing to recuse himself from presiding over her state court lawsuit, allegedly violated her rights to due process and equal protection. Petitioner's argument is without merit. Allegations of alleged due process and equal protection violations do not defeat judicial immunity. *Stump*, 435 U.S. at 355-360 (holding that a state court judge does not lose his absolute immunity from civil liability when his actions are alleged to have deprived a litigant of due process); *Rheuark v. Shaw,* 628 F.2d 297, 303-304 (5th Cir.1980) (holding that judge was entitled to immunity even though delay by the judge in processing the plaintiff's criminal case amounted to a denial of due process), *cert. denied,* 450 U.S. 931 (1981); *Collie v. Kendall*, 1999 WL 329737, *4-5 (N.D.Tex. 1999) ("the fact that [the judge's] actions may have violated [the plaintiff's] procedural due process rights does not deprive [the judge] of jurisdiction or judicial immunity."); *Holeman v. Elliott*, 732 F.Supp. 726, 727 (S.D.Tex. 1990) (finding a judge judicially immune despite plaintiff's

claim that the judge's actions in holding ex parte hearings deprived him of his right to due process); *Adams v. McIlhany*, 593 F.Supp. 1025, 1029-1031 (N.D.Tex. 1984); *Anderson v. City of Dallas*, 116 Fed.Appx. 19, *10 (5th Cir. 2004) (granting quasi-judicial immunity to administrative hearing officers against claims of equal protection violations); *Hudson v. American Arbitration Ass'n*, 101 Fed.Appx. 947 (5th Cir. 2004) (noting that "[a]ny equal protection claims against the district court are barred by judicial immunity"); *Krause v. Leonard*, 2009 WL 416284, *14 (S.D.Tex. 2009) (dismissing due process and equal protection claims against a judge on grounds of judicial immunity); *Champluvier v. Evans*, 2008 WL 2699796, *6 (N.D.Miss. 2008) (same). Rather, the sole inquiry is whether the judge acted in the clear absence of jurisdiction. *Stump, Brandley*, *supra*. As is discussed above, Judge Porter was acting within the scope of his jurisdiction and hence, he is absolutely immune from suit notwithstanding plaintiff's allegations of alleged due process and equal protection violations.

Because Price's claims against Judge Porter are directed at actions or inactions undertaken in the performance of his judicial duties as a state court judge, plaintiff's suit is barred by the doctrine of absolute judicial immunity.

Accordingly, **IT IS RECOMMENDED** the defendant's Motion to Dismiss [rec. doc. 10] be **GRANTED**, and accordingly, that the instant civil rights action be **DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in chambers at Lafayette, Louisiana, this 31st day of March 2009.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE